CALLOWAY *vs.* GILMER.

[BILL IN EQUITY BY INFANT HEIRS, TO SET ASIDE PURCHASE BY EXECUTOR
AND GUARDIAN AT HIS OWN SALE.]

1. *Purchase by trustee at his own sale ; when set aside in equity.*— The defendant having married the complainants' mother, who was at the time their guardian by appointment from the probate court, and also executrix of their deceased father's will; and having afterwards procured from the probate court, as executor in right of his wife, an order for the sale of the decedent's real estate, which was devised to the complainants jointly with their mother; and having himself become, through an agent, the purchaser at the sale,—the sale was set aside at the instance of the infant devisees, although no fraud, unfairness, or inadequacy of price was shown.

APPEAL from the Chancery Court at Montgomery.
Heard before the Hon. WADE KEYES.

THE bill in this case was filed, on the 31st May, 1858, by Peachy R. Gilmer and Fleming M. Gilmer, infants suing by their next friend, against Willis R. Calloway, Mary E. Calloway, his wife, Samuel B. Marks, F. W. Jordan, and Jere. Lamar ; and sought to set aside a sale of certain real estate, which was made by said Calloway and wife, as executor and executrix of the last will and testament of Robert G. Gilmer, deceased, under an order of the probate court, on the 4th December, 1854. The complainants were the only children and heirs-at-law of said Robert G. Gilmer, who died in the early part of the year 1853, and by whose last will and testament, which was duly admitted to probate after his death, the lands now in controversy were devised, in the event of the second marriage of his widow, to her and the complainants, to be divided equally among them. The testator's widow duly qualified as executrix of his will, and also as guardian of the complainants, and afterwards married the

defendant Calloway. In September, 1854, Calloway and wife, as executor and executrix, procured from the probate court an order for the sale of the lands, on the ground that they could not be equitably divided among the devisees. At the sale, Jere. Lamar became the purchaser, under an agreement with Calloway that he would buy it for the latter. The sale was confirmed by the probate court, and the executor and executrix were ordered to make a deed to Lamar, who was reported by them to be the highest and best bidder, and to have paid the purchase-money; and a conveyance was accordingly executed by them to Lamar, who, on the 19th December, 1855, conveyed the lands, by deed without warranty, to Calloway. No part of the purchase-money was in fact paid by Lamar; but Calloway and wife, on settlement with the probate court as executor and executrix, were charged with the whole amount, while the complainants' portion was decreed to them as guardians. Marks and Jordan were joined as defendants, on the ground that Calloway had resold a portion of the land to each of them, at an advanced price.

On final hearing, on pleadings and proof, the chancellor dismissed the bill as to the defendant Marks; confirmed the sale by Calloway to Jordan, as if made in trust for the complainants; set aside Calloway's sale and purchase of the lands remaining unsold by him, and ordered a reference of the matters of account,—directing the master to charge Calloway with two-thirds of the rents of the entire tract of land, up to the time of his sales to Marks and Jordan respectively, and with two-thirds of the purchase-money received by him from them, and to credit him with the amount paid for taxes on the lands, and with the value of permanent improvements erected by him. From this decree Calloway now appeals, and here assigns it as error.

WATTS, JUDGE & JACKSON, for appellant.—1. Calloway, being executor in right of his wife, and thereby having an interest in the testator's estate, had the right to purchase at his own sale.—Brannan v. Oliver, 2 Stewart, 47;

Saltmarsh v. Beene, 4 Porter, 283; McLane v. Spence, 6 Ala. 894; Julian v. Reynolds, 8 Ala. 681; McCartney v. Calhoun, 17 Ala. 301; Charles v. Dubose, 29 Ala. 367. No fraud or unfairness in the sale is asserted, and the proof shows that the lands brought their full market value at the time.

2. The fact that Calloway, at the time of the sale, was guardian of the complainants in right of his wife, cannot affect his right to purchase at the sale. He made the sale as executor, and not as guardian; and no part of the lands had then been assigned or set apart to the complainants, or to Calloway and wife as their guardians. Where the offices of executor and guardian are united in the same person, he holds the estate in his hands as executor, and does not hold anything as guardian which is not separate from the assets of the estate, or placed to his account as guardian.—Davis v. Davis, 10 Ala. 299–300.

Saffold & Arrington, *contra.*—It is admitted, that the sale was made by Calloway and wife as executor and executrix; and that all the formalities of the statute, regulating sales by executors and administrators, were complied with; but it is insisted, that Calloway has not brought himself within the exception to the general rule established by several decisions of this court, on the authority of Brannan v. Oliver, 2 Stewart, 47. Although that case has never been overruled, its correctness has been frequently questioned, and an intention declared not to extend the exception to the general rule which forbids a purchase by a trustee at his own sale.—McCartney v. Calhoun, 17 Ala. 303; Andrews v. Hobson, 23 Ala. 236; Montgomery v. Givhan, 24 Ala. 585; Saltmarsh v. Beene, 4 Porter, 283.

1. Calloway did not have such an interest in the estate or lands as, under the established exception, authorized him to purchase at his own sale. His only interest was as husband and trustee of the testator's widow, to whom the lands were devised jointly with the complainants, and whose interest therein belonged to the *corpus* of her

separate estate. He is within neither the letter nor the reason of the exception.

2. The exception has never been extended to sales of realty; and the early cases in Virginia and Kentucky, on which it was at first partly based, have been since over-ruled, so far as regards sales of real estate.—Moore v. Hilton, 12 Leigh, 28; Bailey's Adm'r v. Robinson, 1 Grattan, 4; Grider v. Payne, 9 Dana, 188. In South Carolina, the exception never has been extended to sales of real estate.—Stallings v. Freeman, 2 Hill's Ch. 401–09.

3. The evidence shows that the land did not bring its full value at the sale. The average price per acre was $7 98; while the complainants' witnesses fix the average value at $9 68, and the defendant's at $8 50; making a difference in the aggregate of over $1,000, according to the defendant's own witnesses. Moreover, it appears that the purchase was not made with Calloway's own means or credit, and that neither he nor Lamar ever paid anything.—McCartney v. Calhoun, 17 Ala. 304; Julian v. Reynolds, 8 Ala. 680; Montgomery v. Givhan, 24 Ala. 584; Mosely v. Lane, 27 Ala.

4. In considering the validity of the defendant's purchase, he is not to be regarded in the capacity of executor only; being at the time, by virtue of his marriage, the guardian of the complainants jointly with his wife.—Carlisle v. Tuttle, 30 Ala. 613. As guardian, it was his duty to represent and protect the interests of his wards; and he could not become the purchaser of their property, either at a judicial sale under adverse process, or at a sale made by himself in another capacity.—Chapin v. Weed, 1 Clarke's Ch. 464; Everton v. Tappan, 5 John. Ch. 498; Campbell v. Johnson, 1 Sandf. 148; Torrey v. Bank of Orleans, 9 Paige, 653; 7 Hill, 260; 7 Watts, 412; 7 Gill & John. 2; 2 Gill, 164; 9 Paige, 238. These authorities establish the proposition, that the disqualification attaches to the fiduciary character, independent of the mode of sale.

R. W. WALKER, J.—No principle is more firmly established in the equity jurisprudence of this country,

than that a purchase by a trustee, for his own benefit, at a sale of the trust property, is voidable at the option of the *cestui que trust*, and will be set aside, if application for that purpose be made in a reasonable time; and it makes no difference in the application of the rule, whether the purchase be direct or indirect, in person or through an agent, 'or by the medium of a person who subsequently reconveys to the trustee.—Davone v. Fanning, 2 Johns. Ch. 252; Cunningham v. Rogers, 14 Ala. 147; McCartney v. Calhoun, 17 Ala. 301; Andrews v. Hobson, 23 Ala. 219; Montgomery v. Givhan, 24 Ala. 584; Charles v. Dubose, 29 Ala. 369; 1 White & Tudor's Lead. Cases, (3d ed.) 209, 212, and cases cited.

To this eminently wise and conservative principle, the previous decisions of this court require us to recognize a single exception—that is, that such executors and administrators *as have an interest in the property sold*, may purchase at a sale of the goods of the estate, provided there is no unfairness, and the property is exposed to sale in the ordinary mode, and under such circumstances as will command the best price.—Brannan v. Oliver, 2 Stewart, 47; Saltmarsh v. Beene, 4 Porter, 283, 295; McLane v. Spence, 6 Ala. 894; Julian v. Reynolds, 8 Ala. 680, 683; McCartney v. Calhoun, 17 Ala. 301; Andrews v. Hobson, 23 Ala. 235–6; Montgomery v. Givhan, 24 Ala. 579, 584–5; Charles v. Dubose, 29 Ala. 371. The existence of this exception has, more than once, been regretted by our predecessors, and a determination manifested to extend it no further.—McCartney v. Calhoun, *supra;* Andrews v. Hobson, *supra;* Montgomery v. Givhan, *supra.* We are not, however, disposed to assent to the argument of the appellees' counsel, that the right of the executor or administrator who has an interest in the property sold, must be confined to personal estate; and in the view we take of this case, we are relieved from the necessity of considering, whether an executor or administrator, whose wife is one of the legatees, devisees, or distributees of the property sold, has such an interest as brings him within the exception referred to. Before Calloway's marriage with the widow, she had been appointed guardian

of the complainants; and the effect of her subsequent marriage was to make her husband co-guardian, as well as co-executor with her, during the coverture.—Carlisle v. Tuttle, 30 Ala. 624. Hence, in considering the validity of the purchase made by the appellant, he is to be regarded, not only in the capacity of executor, but also in his character as guardian of the complainants.

The rule which holds the purchase of the trust property by a trustee to be voidable at the election of the *cestui que trust*, applies in all its force to guardians, and the disqualification attaches to the fiduciary character, independent of the mode of sale; the incapacity extending as well to judicial or other sales under adverse proceedings, as to those made by the guardian under his powers as such. Scott v. Freeland, 7 S. & M. 410; Patton v. Thompson, 2 Jones' Eq. 285; 1 White & Tudor's Lead. Cases. (3d. ed.), 209, 213, 215–16, and cases cited. Hence, the simple fact that the sale, at which Calloway purchased, was made by him as executor, and not as guardian, does not, of necessity, relieve him from the influence of the disabling rule.

It is said, however, that "when the offices of executor and guardian are united in the same person, he holds the estate in his hands as executor, and does not hold anything as guardian which is not separate from the assets of the estate, or placed to his account as guardian," (Davis v. Davis, 10 Ala. 299–300;) and hence, it is argued, that the trust for complainants, with which the defendant was clothed in his capacity as their guardian, did not extend to the lands sold by him as executor, or in any way impair his right to purchase at that sale. But we think that the argument proceeds upon a mistaken view of the foundation and extent of the rule which disables a trustee from purchasing the trust property. No person can become a purchaser of an interest in property, where he has a duty to perform which is inconsistent with the character of a purchaser; in other words, where a person stands in the situation of a trustee for others, and bound as such to protect the general interests of those for whose benefit the trust was created, in regard to the subject of the sale, he is incapacitated from purchasing for his own

benefit, no matter by whom, or under what proceeding the sale is made.—Torrey v. Bank of Orleans, 9 Paige, 650, 763; 1 White & Tudor's Lead. Cases, (3d ed.) 209–10, 215, 92; Van Epps v. Van Epps, 9 Paige, 238, 241.

If Calloway had made the sale as guardian, no one can doubt that it would be set aside. We do not see any sound principle, on which the mere fact that he sold as executor, and not as guardian, can be held to change the result. The property sold was none the less the property of his wards, because it was in his hands as executor, and not as guardian. The proceeds of the sale were, as he knew, a part of the fortune of his wards, and destined to pass into his possession as their guardian. It was the interest of his wards, as he well knew, that the property should bring the highest price which could be obtained for it; whilst it was his interest as a purchaser, buying it on his own account, to bid it in at the lowest sum for which he could get it. Benefit to the guardian, and injury to his wards, would thus keep even pace. Surely, that is a low view of the legal duty of a guardian, which would authorize him to place himself in a situation where it becomes his personal interest that the property which belongs to his wards should be sold at a price below its real value. The very object of the disabling rule is to prevent any such conflict between the fiduciary duties and personal interest of the trustee.

Again; the defendant, as executor, had as many advantages of superior information as to the situation and value of the land, and as much control of the sale, as he would have had if the property had been held and sold by him as guardian. The superior knowledge which a trustee has the means of acquiring, as to the condition and value of the property, and the power he has to control or affect the sale, occupy a prominent place among the reasons for the rule which disqualifies him from purchasing at his own sale of the trust property.—*Ex parte* Lacey, 6 Vesey, 625; *Ex parte* James, 8 Vesey, 337; 1 White & Tudor's Lead. Cases, (3d ed.) top pp. 198–9, 201, 208, 217. Upon principle, therefore, it seems to us that, where the same person is executor of the will and

guardian of some of the devisees, he is incapacitated from purchasing the property, an interest in which is devised to his wards, although the sale is made by him in his capacity as executor, and not as guardian, and although he may have such an interest in the property as, under our decisions, would give him the right to become the purchaser, if he occupied no other fiduciary relation towards the persons to be affected by the sale, than that of executor of the devisor.

In Campbell v. Johnson, (1 Sandf. 148,) a testator appointed two persons his executors, and the guardians of his children, and devised all his estate to them, in trust to sell for the benefit of his heirs. The land was subject to mortgages given by the testator, under one of which it was sold, and one of the executors purchased. The court held, that the sale must be set aside on the application of the heirs, upon the ground that, in both capacities—as trustees to sell, and as guardians of the children —the executors had a duty to perform in regard to the property, which rendered it inequitable for either of them to become a purchaser.—See, also, Evertson v. Tappen, 5 Johns. Ch. 498, 514; Torrey v. Bank of Orleans, 9 Paige, 650; Richardson v. Spencer, 18 B. Monroe, 450.

Moreover, it appears that Lamar bid off the land for Calloway, under an agreement that it should be subsequently reconveyed by him to Calloway; and that although the executor and executrix reported to the probate court that Lamar had paid the purchase-money, and thereupon obtained an order to make titles to him, yet, in point of fact, no part of the purchase-money was ever paid by Lamar; and that Calloway himself has made no *actual* payment of the money; but he and his wife, as executor and executrix, were debited with the entire amount, on settlement in the probate court, and the portion to which the complainants were entitled was decreed to Calloway and wife as their guardians, and charged against them in their accountings as such guardians. These facts bring the defendant very near, if not within, the line of disability which incapacitates a party from becoming a purchaser for his own benefit, with the means, or on the

24

credit, of the estate he represents, or the ward of whom he is guardian.—See McCartney v. Calhoun, 17 Ala. 301; Montgomery v. Givhan, 24 *ib.* 584; Mosely v. Lane, 27 *ib.* 62.

It is proper to remark, that the defendant is not shown to have been guilty of any intentional fraud; nor does the testimony convince us, that the price at which the land was sold was not its full value at that time.   But the rule against purchases of trust property by trustees is inflexibly applied, without regard to the consideration paid, or the honesty of the intent.   "It matters not that there was no fraud contemplated, and no injury done : the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it."   "The sale is set aside, not because there is, but because there may be fraud."—1 White & Tudor's L. C. 210, and cases cited ; Brothers v. Brothers, 7 Ired. Eq. 156 ; Saltmarsh v. Beene, 4 Porter, 283, 293.

There is no error in the decree, of which the appellant, Calloway, can complain, (see 7 Rich. Eq. R. 34, 44; 1 White & Tudor's L. C. 217–18–19,) and it must be affirmed, at his costs.